## UNITED STATES DISTRCIT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA DIVISION)

| | |
|---|---|
| ANTHONY LAMONT GARDNER, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KENYATTA MOMON, in his individual and ) | Case No. |
| official capacity as a member of the Fairfax ) | |
| County Police Department, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Serve:  Fairfax County Police Department ) | |
| 12099 Government Center Parkway ) | |
| Fairfax, Virginia 22035 ) | |
| ) | |
| THOMAS ARMEL, in his individual and ) | |
| official capacity as a member of the Fairfax ) | |
| County Police Department, ) | |
| ) | |
| Serve:  Fairfax County Police Department ) | |
| 12099 Government Center Parkway ) | |
| Fairfax, Virginia 22035 ) | |
| ) | |
| KEVIN DAVIS, in his ) | |
| official capacity as the Chief of the Fairfax ) | |
| County Police Department, ) | |
| ) | |
| Serve:  Fairfax County Police Department ) | |
| 12099 Government Center Parkway ) | |
| Fairfax, Virginia 22035 ) | |
| ) | |
| FAIRFAX COUNTY POLICE ) | |
| DEPARTMENT, ) | |
| ) | |
| Serve:  Fairfax County Police Department ) | |
| 12099 Government Center Parkway ) | |
| Fairfax, Virginia 22035 ) | |
| ) | |

COUNTY OF FAIRAX,                          )
                                           )
Serve:  Office of the County Attorney      )
        12000 Government Center Parkway     )
        Suite 549                          )
        Fairfax, Virginia 22035            )
                                           )
                                           )
        Defendants.                        )
_____)

## **COMPLAINT**

COMES NOW Plaintiff, Anthony Lamont Gardner, Jr. ("Plaintiff" or "Gardner"), by and through his attorney, and for Plaintiff's Complaint alleges and states as follows:

### **JURISDICTION**

1.      This is a civil action for monetary relief for injuries sustained by Plaintiff as a result of the acts, conduct, and omissions of the County of Fairfax Police Officers Kenyatta Momon and Thomas Armel (jointly "Defendant police officers"), relating to the violation of Plaintiff's constitutional rights, and the actions and inactions of Kevin Davis, Chief of the Fairfax County Police Department, Fairfax County Police Department, and County of Fairfax with regard to those injuries. On or about October 30, 2021, Defendant police officers, while on duty and in uniform, arrested Plaintiff, during which they violated his constitutional rights.

2.      This action arises under 42 U.S.C. § 1983, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

3.      This action is also brought pursuant to the laws of the Commonwealth of Virginia, both statutory and common law. This Court has ancillary jurisdiction over said claims.

4.      Federal jurisdiction is hereby conferred by 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (Civil Rights).

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the wrongful actions herein alleged occurred in the County of Fairfax, in the Commonwealth of Virginia. Defendant police officers are Fairfax County Police Officers working and exercising their authority in Fairfax County, Virginia. Kevin Davis is the Chief of the Fairfax County Police Department and works and exercises his authority in Fairfax, Virginia. Fairfax County Police Department and County of Fairfax are located in Fairfax, Virginia. Fairfax is located within the Eastern District of Virginia, Alexandria Division.

## PARTIES

6.     Plaintiff Anthony Lamont Gardner, Jr. ("Plaintiff" or "Gardner") was at all times pertinent hereto a resident of the County of Fairfax, Commonwealth of Virginia. He is of African American descent. Plaintiff was subjected to unnecessary, excessive and unreasonable force on October 30, 2021.

7.     Defendant Kenyatta Momon, a Fairfax County police officer, and a resident of the Commonwealth of Virginia, was at all times pertinent to this Complaint an officer employed by Defendant Police Department, and was at all times relevant to this Complaint uniformed, on duty, and acting within the scope of his employment and under color of state law. Defendant Momon is being sued in both his official and individual capacities.

8.     Defendant Thomas Armel, a Fairfax County police officer, and a resident of the Commonwealth of Virginia, was at all times pertinent to this Complaint an officer employed by Defendant Police Department, and was at all times relevant to this Complaint uniformed, on duty, and acting within the scope of his employment and under color of state law. Defendant Armel is being sued in both his official and individual capacities.

9.      Defendant Kevin Davis ("Defendant Police Chief"), the Chief of the Fairfax County Police Department, and a resident of the Commonwealth of Virginia, was at all times pertinent to this Complaint the Chief of Police employed by Defendant Police Department, and acting within the scope of his employment and under color of state law. Defendant Police Chief is being sued in his official capacity.

10.     Defendant Fairfax County Police Department ("Defendant Police Department") is a law enforcement agency headquartered in Fairfax, Virginia. Defendant Police Department was established by the Fairfax County Board of Supervisors pursuant to the authority of Chapter 361 of the Acts of the Virginia General Assembly of 1940. This law and its subsequent amendments have continued in effect.

11.     Defendant County of Fairfax ("Defendant County") is a governmental entity organized under the laws of the Commonwealth of Virginia and is a person for purposes of 42 U.S.C. § 1983.

12.     Defendants are jointly and severally liable for the excessive force used against Plaintiff on October 30, 2021.

13.     Defendants are joined, pursuant to the Federal Rule of Civil Procedure 20, as the claims against Defendants arise from the same occurrence or series of occurrences.

## FACTS

14.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 13 of this Complaint.

15.     On or about October 30, 2021, Plaintiff was shopping at Shoppers Food Warehouse located at 7660 Richmond Hwy, Alexandria, VA 22306 ("Shoppers").

16.     Feeling anxious and needing help getting shelter, Plaintiff called 911 and asked the call center to send police officers to help him. He stayed on the phone with the call center until Defendant police officers arrived.

17.     Defendant police officers arrived at Shoppers around 2:19 pm, and sought out Plaintiff. Once he saw Defendant police officers, Plaintiff hung up the telephone. Other officers also arrived on the scene.

18.     Defendant police officers did not immediately address Defendant or respond to his request for help, but rather addressed Shopper's personnel. One of Defendant police officers asked the store manager, "what do you want us to do with him?" Store manager Mary Ann Banholzer ("store manager" or "Banholzer") responded, "ban him." One of Defendant police officers said, "okay, that sounds good."

19.     Plaintiff, who was at the cash register checking out a bottle of water, verbally acquiesced, but asked how the store manager had the authority to ban him.

20.     The store manager responded, "this is my store, sir, and you are banned."

21.     Plaintiff responded, "this is not your store. This is my land, bitch. What the fuck are you talking about…."

22.     Defendant Momon called to his partner by his first name, "Thomas."

23.     Defendant Armel approached Plaintiff and tried to grab for his arm.

24.     Plaintiff took a few steps backward.

25.     One of Defendant police officers said, "disorderly conduct, right?"

26.     One of Defendant police officers then stated, "you're about to go to jail, Slim. Hey, Slim, you're about to go to jail. Hey, what you trying to do? You trying to go to jail or what?"

27.     Defendant Armel reached his left hand toward his gun and placed it on top of the gun.

28.     Afraid for his safety, Plaintiff pulled out his phone to record the incident.

29.     Defendant Armel rushed at Plaintiff, grabbing at him, and succeeding in briefly grabbing either Plaintiff's shirt or his body or arm.

30.     Defendant Momon rushed to join.

31.     Together, Defendant police officers tackled Plaintiff.

32.     Defendant Momon claimed that Plaintiff hit him in the face during the time the Defendant police officers were attempting to bring Plaintiff to the ground.

33.     Within ten seconds, Plaintiff was pinned to the ground on his side, restrained and subdued. Defendant Armel was straddled over Plaintiff, and was holding onto Plaintiff with both his hands. Defendant Momon had his left hand on Plaintiff's face and/or neck. Plaintiff was unable to move much as he was pinned down by both officers.

34.     As Plaintiff lay restrained on the ground, unable to move, and secured by Defendant police officers, Officer Momon hit or punched Plaintiff in the face, at the same time saying, "you [inaudible] me in the face? Huh?"

35.     Plaintiff was holding his left hand defensively in front of his face to ward off the officer's blows. Defendant Momon then said to Plaintiff, "move your hand. Move your hand. You punched me in the fucking face?"

36.     Defendant Momon grabbed Plaintiff's left hand, which Plaintiff was holding defensively in front of his face, and pulled it out of the way. Defendant Momon gave Plaintiff's hand to Defendant Armel, who held Plaintiff's hand out of the way.

6

37.    Plaintiff said, "how are you going to hit me, I'm on the fucking…" and the rest of the sentence was cutoff when Defendant Momon hit or punched Plaintiff in the face another time. Defendant Momon then said, "you [inaudible] me in the face? What the fuck is wrong with you? What the fuck is wrong with you?"

38.    Plaintiff started to say, "what the fuck is wrong…" but he was being choked by Defendants' hands holding him down and could not finish the sentence. Plaintiff instead ended up audibly choking, wheezing, and gasping for breath. One or both of Defendant police officers were choking Plaintiff as he lay on the ground.

39.    Defendant Momon then said, "put your hands behind your back. Put your hands behind your back," as both Defendant police officers forced Plaintiff onto his stomach and started handcuffing Plaintiff.

40.    Plaintiff managed to wheeze out, "I can't breathe."

41.    Defendant Momon replied, "I don't give a shit what the fuck you are talking about."

42.    Plaintiff apologized several times, saying, "don't hit me again," and "my hands are behind my back." Defendant Momon responded, "fuck you, man," and "what the fuck is you talking about."

43.    Plaintiff cried out, "they're trying to kill me!" and "I can't breathe" multiple times while being restrained on the ground handcuffed.

44.    Defendant police officers and Plaintiff all came outside the Shoppers.

45.    Defendant Momon told Plaintiff to sit down.

46.    Plaintiff, with his hands cuffed behind his back and his back to a brick wall, said, "how the fuck I'm to sit down?"

47.    Defendant Momon said, "sit down, that's the fuck why," as Defendant Momon used his hands to sweep Plaintiff's feet out from under him and force him to the ground. When Plaintiff hit the ground, Defendant Momon put his weight on Plaintiff's leg. Plaintiff started yelling in pain.

48.    Plaintiff again said, "they are trying to kill me," several times.

49.    As Defendant Momon held Plaintiff down, Plaintiff cried out in pain, "ah, my fucking leg, you're bending my knee the wrong way, my knee does not bend that way, fuck." He continued crying out in pain, telling Defendant Momon that he was crushing Plaintiff's leg, that his leg was hurting, and that his knee did not bend that way. Eventually Momon got off Plaintiff's leg and the officers stood Plaintiff up.

50.    Defendant Momon assaulted Plaintiff by hitting or punching Plaintiff in the face twice, pulling Plaintiff's hand out of the way so that he could hit Plaintiff in the face, choking Plaintiff, assisting Defendant Armel assault Plaintiff, not stopping Defendant Armel from assaulting Plaintiff, and restraining Plaintiff outside while crushing his leg. These assaults all occurred while Plaintiff was on the ground and restrained by police officers. Defendant Momon's actions were in retaliation for his belief that Plaintiff had hit Defendant Momon in the face, and were done intentionally, outrageously, and vengefully. Defendant Momon's actions were done in reckless disregard for Plaintiff's constitutional rights, and evince a deliberate indifference to and a deprivation of Plaintiff's constitutionally protected rights.

51.    Defendant Armel assaulted Plaintiff by assisting Defendant Momon, restraining Plaintiff while Defendant Momon hit him, holding Plaintiff's left hand away from his face where Plaintiff was holding it to protect himself, not stopping Defendant Momon from hitting Plaintiff, and choking Plaintiff as he lay restrained on the ground. At no time did Defendant Armel intervene to stop Defendant Momon from hitting Plaintiff. Defendant Armel's actions were in retaliation for

his belief that Plaintiff had hit Defendant Momon and/or Defendant Armel, and were done intentionally, outrageously, and vengefully. Defendant Armel's actions were done in reckless disregard for Plaintiff's constitutional rights, and evince a deliberate indifference to and a deprivation of Plaintiff's constitutionally protected rights.

52.     The entire incident was captured by several videos, including Defendant Momon's and Defendant Armel's body worn cameras.

53.     Plaintiff was transported to the Fairfax County Magistrate's Office, where he was charged with two counts of assault on a police officer, one count of resisting arrest, and one count of disorderly conduct.

54.     The morning the charges were to go to a trial by jury, January 9, 2023, all charges against Plaintiff were dismissed with prejudice by the Fairfax Circuit Court.

55.     The assaults by Defendant police officers were reviewed by Defendant Police Department. Defendant Police Department concluded that the force used was "justified."

56.     Since that altercation, Plaintiff has suffered and continues to suffer injury from severe and persistent headaches, damage to his knee, emotional distress, severe mental anguish, and pain and suffering.

57.     The conduct of Defendant police officers was unjustified, unprovoked, and grossly disproportionate to the force necessary and appropriate, and amounted to the use of excessive force in violation of Plaintiff's clearly established Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

58.     The conduct of Defendant police officers was unjustified, unprovoked, and grossly disproportionate to the force necessary and appropriate, and amounted to assault under Virginia law.

59.     The conduct of Defendant police officers in seizing, using excessive force, and arresting Plaintiff for speech amount to suppression of free speech in violation of Plaintiff's clearly established First Amendment rights.

60.     The actions of all parties named herein were unjustified, unprovoked, objectively unreasonable, and grossly disproportionate to the force necessary and appropriate, and amounted to the use of excess force in violation of Plaintiff's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

61.     The unconstitutional actions complained of herein became known to, among others, Defendant Police Chief, Defendant Police Department, and Defendant County, who failed to adequately investigate this matter. Defendant Police Department found that the force used was "justified." Therefore, Defendant Police Chief, Defendant Police Department, and Defendant County approved, ratified, and knowingly acquiesced in the conduct described herein in all respects.

62.     Defendants police officers, individually and in concert with each other, acted under the color of law in their official capacities, to deprive Plaintiff of his rights and freedoms guaranteed to him under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and by 42 U.S.C. §§ 1983 and 1988.

63.     On an objective basis, no reasonable officer on the scene would have concluded that the disputed actions should have been taken against Plaintiff.

64.     Defendants Police Chief, Police Department, and County are under a duty to run their policing activities in a lawful manner so as to protect not only the peace of Fairfax County, Virginia, but also to preserve the rights, privileges, and amenities of residents and visitors to Fairfax County, Virginia, as those rights, privileges, and amenities are guaranteed and secured to

those residents and visitors by the Constitution of the United States and the laws of the Commonwealth of Virginia.

65.    Defendants Police Chief, Police Department, and County are under a duty to hire, train, and supervise competent law enforcement officers.

66.    Defendants Police Chief, Police Department, and County are under a duty to run their policing activities in a lawful manner, and to preserve the rights, privileges, and amenities guaranteed and secured to U.S. citizens by the Constitution and the laws of the Commonwealth of Virginia, and to ensure its employed police officers act in the same manner.

67.    At all times relevant and material, Defendant police officers were acting by virtue of, and under the color of, their offices as law enforcement officers.

68.    All Defendants named herein are jointly and severally liable for the violations of Plaintiff's constitutional rights.

### COUNT I: VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### VIOLATION OF PLAINTIFF'S FOURTH, FIFTH, EIGHTH
### AND FOURTEENTH AMENDMENT RIGHTS
### AS TO ALL DEFENDANTS

69.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 68 of this Complaint.

70.    Defendant police officers battered Plaintiff while he was restrained on the ground. Defendant police officers held Plaintiff down, hit him multiple times in the face, assisted one another in the battery, held Plaintiff's hand out of the way to prevent him from protecting himself, and choked him so that he was having trouble breathing. In addition, Defendant Momon battered Plaintiff by hurting him while he was in handcuffs and restrained on the ground while outside the Shoppers.

71.     The acts and omissions of Defendants, individually and collectively, amounted to an unwarranted violation of Plaintiff's clearly established Fourth, Fifth, Eighth and Fourteenth Amendment Rights.

72.     Defendants, collectively, and each of them individually, knew or reasonably should have known that battering Plaintiff while he was restrained would deprive him of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

73.     At all relevant times Defendant police officers, individually and collectively, were operating under the color of state law, authority vested in Defendant police officers by the Commonwealth of Virginia, Defendant Police Chief, Defendant Police Department, and Defendant County to act as police officers.

74.     Defendant police officers, collectively, and each of them individually, created a danger depriving Plaintiff of his right from unreasonable seizure under the Fourth Amendment of the U.S. Constitution.

75.     Defendant police officers, collectively, and each of them individually, knew or reasonably should have known the reasonable amount of force necessary to effectuate Plaintiff's seizure.

76.     Defendant police officers, collectively, and each of them individually, knew or reasonably should have known that once Plaintiff was restrained, Plaintiff was not resisting and not a threat.

77.     Defendant Police Chief, Defendant Police Department, and Defendant County, collectively, and each of them individually, is responsible for the hiring, firing, training, and supervision of Defendant police officers.

78.     Defendant Police Chief, Defendant Police Department, and Defendant County, collectively, and each of them individually, is responsible for investigating misconduct by Defendant police officers. An investigation occurred, which found that Defendant police officers acted with reasonable force. Therefore, Defendant Police Chief, Defendant Police Department, and Defendant County ratified and approved the actions of Defendant police officers.

79.     As a direct and proximate result of Defendant police officers' actions, Plaintiff has and continues to suffer injury and damages described above, more specifically but without limitation, severe and persistent headaches, damage to his knee, emotional distress, severe mental anguish, and pain and suffering.

80.     Defendants, acting under the color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.   Further, their actions in the assault of Plaintiff show deliberate indifference and a deprivation of Plaintiff's constitutionally protected rights.

81.     The circumstances demonstrate that Defendant police officers' actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendant police officers' actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant police officers' actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of their actions, with Defendant police officers being aware that their conduct probably would injure Plaintiff.

82.     Therefore, Defendants are liable to Plaintiff for compensatory and punitive damages, in the amount to be determined by the jury at the time of trial.

83.     Defendants are liable to Plaintiff for costs and attorney's fees pursuant to 42 US.C. § 1988, jointly and severally, for their violation of Plaintiff's clearly established Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

## COUNT II: BATTERY
## AS TO DEFENDANTS MOMON AND ARMEL

84.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 83 of this Complaint.

85.     Defendant Momon is liable for the battery he committed on Plaintiff when Defendant Momon hit or punched Plaintiff in the face twice in retaliation for his belief that Plaintiff hit him in the face, forcibly moved Plaintiff's hand away from its position defending his face, and choked Plaintiff. Defendant Momon is liable for the battery he committed on Plaintiff while Plaintiff was restrained by him and Defendant Armel and unable to move, begging Defendant Momon not to hit him, and unable to breathe.

86.     Defendant Momon is also liable for the battery he committed on Plaintiff when, outside the Shopper's, he forced Plaintiff to the ground and held him down in such a way that he severely hurt Plaintiff. Defendant Momon battered Plaintiff while Plaintiff was restrained by him and unable to move, begging Defendant Momon to get off his leg, which was bent the wrong way.

87.     Defendant Momon is liable for the battery Defendant Armel committed on Plaintiff because he directed and assisted in the battery. Defendant Momon is liable for the battery Defendant Armel committed on Plaintiff because Defendant Momon did not stop Defendant Armel or intervene in the battery.

88.     Defendant Armel is liable for the battery he committed on Plaintiff when he restrained Plaintiff while Defendant Momon hit or punched Plaintiff in the face repeatedly and

vengefully. Defendant Armel is liable for the battery he committed on Plaintiff by moving his left hand, which was protecting his face, so that Defendant Momon could hit him again in the face.

89.    Defendant Armel is liable for the battery he committed on Plaintiff when he restrained Plaintiff in such a way that Plaintiff was choking and having trouble breathing.

90.    Defendant Armel is liable for the battery Defendant Momon committed on Plaintiff because he assisted Defendant Momon in the battery, and he did not stop Defendant Momon or intervene in the battery.

91.    Defendant police officers' unlawful battery of Plaintiff was unwanted by Plaintiff and was visited upon Plaintiff without his consent.

92.    The acts and omissions of Defendant police officers, collectively, and each of them individually, as set forth above, amounted to an unwarranted assault and battery, as Plaintiff was placed in imminent fear of unlawful and unconsented touching.

93.    The acts and omissions of Defendant police officers, collectively, and each of them individually, as set forth above, amounted to an assault and battery which was committed without justification, provocation, privilege, or probable cause.

94.    The acts and omissions of Defendant police officers, collectively, and each of them individually, as set forth above, amounted to an intentional unlawful act of corporal injury to Plaintiff by force and force unlawfully directed toward Plaintiff, under circumstances which created a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact.

95.    The acts and omissions of Defendant police officers, collectively, and each of them individually, as set forth above, constituted willful and harmful offensive touching of Plaintiff which resulted from an act intended to cause such contact.

96.     As a direct and proximate result of the assault and battery, Plaintiff has suffered and continues to suffer injury and damages described above, more specifically but without limitation, severe and persistent headaches, damage to his knee, emotional distress, severe mental anguish, and pain and suffering.

97.     The circumstances demonstrate that Defendants Momon's and Armel's actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendants Momon's and Armel's actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant police officers' actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of their actions, with Defendant police officers being aware that their conduct probably would injure Plaintiff.

98.     Therefore, Defendants Momon and Armel are liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by the jury at the time of trial.

### COUNT III: VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### VIOLATION OF PLAINTIFF'S 4th AMENDMENT RIGHTS
### AND FAILURE TO INTERVENE AS TO DEFENDANT MOMON

99.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 98 of this Complaint.

100.    Defendant Momon, acting under the color of state law at all times relevant hereto, is liable for failing to intervene and prevent Defendant Armel from battering Plaintiff.

101.    Defendant Momon had a duty to intervene and stop Defendant Armel from battering Plaintiff.

102.    Defendant Momon was in a position to intervene in the unlawful constitutional violations carried out by Defendant Armel when Defendant Armel restrained Plaintiff so that

16

Defendant Momon could hit him, when Defendant Armel held Plaintiff's hand away from his face so that Defendant Momon could hit Plaintiff in the face, and when Defendant Armel choked Plaintiff. Defendant Momon's action were done intentionally, maliciously, and vengefully while Plaintiff was restrained on the ground by two officers.

103.    Despite Defendant Momon being in a position to intervene to stop the violation of Plaintiff's clearly established constitutional right to be free from excessive force, Defendant Momon not only failed to intervene though he was in a position to do so, but also he encouraged and ratified the unconstitutional actions of Defendant Armel against Plaintiff by holding Plaintiff down, and giving Plaintiff's hand to Defendant Armel so that Defendant Momon could better strike Plaintiff in his face, while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

104.    As a direct and proximate result of the violations of his constitutional rights and Defendant Momon's deliberate indifference to Defendant Armel's unconstitutional actions against Plaintiff, Plaintiff has suffered and continues to suffer injury and damages described above, more specifically but without limitation, severe and persistent headaches, emotional distress, severe mental anguish, and pain and suffering.

105.    The circumstances demonstrate that Defendant Momon's actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendant Momon's actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant Momon's actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of his actions, with Defendant Momon being aware that his conduct probably would injure Plaintiff.

106.    Therefore, Defendant Momon is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by the jury at the time of trial.

107.    Defendant Momon liable to Plaintiff for costs and attorney's fees pursuant to 42 US.C. § 1988, jointly and severally, for his violation of Plaintiff's clearly established Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

### COUNT IV: NEGLIGENCE – FAILURE TO INTERVENE
### AS TO DEFENDANT MOMON

108.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 107 of this Complaint.

109.    Defendant Momon, acting under the color of state law at all times relevant hereto, is liable for negligence for failing to intervene and prevent Defendant Armel from battering Plaintiff.

110.    Defendant Momon, as a sworn police officer with Plaintiff seized, had a duty to protect Plaintiff.

111.    Defendant Momon was in a position to intervene in the unlawful constitutional violations carried out by Defendant Armel when Defendant Armel held Plaintiff down so that he could be battered intentionally, maliciously, and vengefully while Plaintiff was restrained on the ground by Momon and Armel.

112.    Defendant Momon was in a position to intervene in the unlawful constitutional violations carried out by Defendant Armel when Defendant Armel held Plaintiff down in such a way that Plaintiff could not breathe properly.

113.    Despite Defendant Momon having a legal duty to protect Plaintiff, and despite Defendant Momon being in a position to intervene to stop Defendant Armel from battering Plaintiff, Defendant Momon not only failed to intervene though he was in a position to do so, but

also he encouraged and ratified the unconstitutional actions of Defendant Armel against Plaintiff by holding Plaintiff down and moving Plaintiff's hand so that Defendant Momon could better strike Plaintiff in his face, while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

114.    In failing to stop the unconstitutional actions of Defendant Armel despite being in a position to do so and despite having a duty to do so, Defendant Momon acted negligently with deliberate indifference to the constitutional rights of Plaintiff.

115.    As a direct and proximate result of the violations of his constitutional rights and Defendant Momon's deliberate indifference to Defendant Armel's unconstitutional actions against Plaintiff, Plaintiff has suffered and continues to suffer injury and damages described above, more specifically but without limitation, severe and persistent headaches, emotional distress, severe mental anguish, and pain and suffering.

116.    Defendant Momon, acting under the color of state law, by his conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.  Further, his actions in the continued assault of Plaintiff show deliberate indifference and a deprivation of Plaintiff's constitutionally protected rights.

117.    The circumstances demonstrate that Defendant Momon's actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendant Momon's actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant Momon's actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of his actions, with Defendant being aware that his conduct probably would injure Plaintiff.

118.    Therefore, Defendant Momon is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by the jury at the time of trial.

**COUNT V: VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**VIOLATION OF PLAINTIFF'S 4th AMENDMENT RIGHTS**
**AND FAILURE TO INTERVENE AS TO DEFENDANT ARMEL**

119.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 118 of this Complaint.

120.    Defendant Armel, acting under the color of state law at all times relevant hereto, is liable for failing to intervene and prevent Defendant Momon from battering Plaintiff.

121.    Defendant Armel had a duty to intervene and stop Defendant Momon from battering Plaintiff.

122.    Defendant Armel was in a position to intervene in the unlawful constitutional violations carried out by Defendant Momon when Defendant Armel held Plaintiff down so that Defendant Momon could repeatedly strike Plaintiff intentionally, maliciously, and vengefully while Plaintiff was restrained on the ground.

123.    Defendant Armel was in a position to intervene in the unlawful constitutional violations carried out by Defendant Momon when Defendant Momon held Plaintiff down in such a way that Plaintiff could not breathe properly.

124.    Despite Defendant Armel being in a position to intervene to stop the violation of Plaintiff's clearly established constitutional right to be free from excessive force, Defendant Armel not only failed to intervene though he was in a position to do so, but also he encouraged and ratified the unconstitutional actions of Defendant Momon against Plaintiff by holding Plaintiff's arm out of the way so that Defendant Momon could better strike Plaintiff in his face, while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

20

125.    In failing to stop the unconstitutional actions of Defendant Momon despite being in a position to do so, and having a legal duty to do so, Defendant Armel acted with deliberate indifference to the constitutional rights of Plaintiff. As a direct and proximate result of Defendant Armel's actions, Plaintiff has suffered and continues to suffer injury and damages described above, more specifically but without limitation, severe and persistent headaches, emotional distress, severe mental anguish, and pain and suffering.

126.    The circumstances demonstrate that Defendant Armel's actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendant actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant Armel's actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of his actions, with Defendant Armel being aware that his conduct probably would injure Plaintiff.

127.    Therefore, Defendant Armel is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by the jury at the time of trial.

128.    Defendant Armel is liable to Plaintiff for costs and attorney's fees pursuant to 42 US.C. § 1988, jointly and severally, for his violation of Plaintiff's clearly established Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

## COUNT VI: NEGLIGENCE – FAILURE TO INTERVENE
## AS TO DEFENDANT ARMEL

129.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 128 of this Complaint.

130.    Defendant Armel, acting under the color of state law at all times relevant hereto, is liable for negligence for failing to intervene and prevent Defendant Momon from battering Plaintiff.

131.    Defendant Armel, as a sworn police officer, had a duty to protect Plaintiff while he was seized, in a compliant position, and not a threat to officers or the general public.

132.    Defendant Armel was in a position to intervene in the unlawful constitutional violations carried out by Defendant Momon when Defendant Armel held Plaintiff down so that Defendant Momon could repeatedly strike Plaintiff intentionally, maliciously, and vengefully while Plaintiff was restrained on the ground. Defendant Armel was in a position to intervene in the unlawful constitutional violations carried out by Defendant Momon when Defendant Momon held Plaintiff down in such a way that Plaintiff could not breathe properly.

133.    Despite Defendant Armel having a legal duty to protect Plaintiff, and despite Defendant Armel being in a position to intervene to stop Defendant Momon from battering Plaintiff, Defendant Armel not only failed to intervene, but also he encouraged and ratified the unconstitutional actions of Defendant Momon against Plaintiff by holding Plaintiff down and moving Plaintiff's hand from protecting his face, while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

134.    In failing to stop the unconstitutional actions of Defendant Momon despite being in a position to do so, Defendant Armel acted negligently with deliberate indifference to the constitutional rights of Plaintiff.

135.    As a direct and proximate result of the violations of his constitutional rights and Defendant Armel's deliberate indifference to Defendant Momon's unconstitutional actions against

Plaintiff, Plaintiff has suffered and continues to suffer injury, including without limitation severe and persistent headaches, emotional distress, severe mental anguish, pain and suffering.

136.    Defendant Armel, acting under the color of state law, by his conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights. Further, his actions in the continued assault of Plaintiff show deliberate indifference and a deprivation of Plaintiff's constitutionally protected rights.

137.    The circumstances demonstrate that Defendant Armel's actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendant Armel's actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant Armel's actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of his actions, with Defendant Armel being aware that his conduct probably would injure Plaintiff.

138.    Therefore, Defendant Armel is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by jury at the time of trial.

**COUNT VII – VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**VIOLATION OF PLAINTIFF'S 1st AMENDMENT RIGHTS**
**AS TO ALL DEFENDANTS**

139.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 138 of this Complaint.

140.    Defendant police officers seized and/or assisted in the seizure of Plaintiff for "disorderly conduct" because Plaintiff raised his voice at the Shopper's store manager, stating, "this is not your store. This is my land, bitch. What the fuck are you talking about…."

141.   The statements of Plaintiff were protected First Amendment speech and did not constitute disorderly conduct.

142.   Nonetheless, Defendant police officers seized Plaintiff in an effort to deprive him of his constitutional right to free speech and in an effort to stop Plaintiff from exercising his right to free speech.

143.   The acts and omissions of Defendants, individually and collectively, amounted to an unwarranted violation of Plaintiff's First Amendment Rights, as he was seized for exercising his right of free speech.

144.   Defendant Police Chief, Defendant Police Department, and Defendant County, collectively, and each of them individually, is responsible for the hiring, firing, training, and supervision of Defendant police officers.

145.   Defendant Police Chief, Defendant Police Department, and Defendant County, collectively, and each of them individually, is responsible for investigating misconduct by Defendant police officers. An investigation occurred, which found that Defendant police officers acted with reasonable force. Therefore, Defendant Police Chief, Defendant Police Department and Defendant County ratified and approved the actions of Defendant police officers.

146.   Defendants, collectively, and each of them individually, knew or reasonably should have known that seizing Plaintiff for exercising his right to free speech would deprive him of his First Amendment Rights.

147.   At all relevant times Defendant police officers, individually and collectively, were operating under the color of state law, authority vested in Defendant police officers by the Commonwealth of Virginia, Defendant Police Chief, Defendant Police Department, and Defendant County to act as police officers.

148.    Defendant police officers, acting under the color of state law and in concert with each other, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.  Further, their actions in seizing Plaintiff for exercising his right to free speech show deliberate indifference and a deprivation of Plaintiff's constitutionally protected rights.

149.    The circumstances demonstrate that Defendants police officers' actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendants police officers' actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant police officers' actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of their actions, with Defendant police officers being aware that their conduct probably would injure Plaintiff.

150.    Therefore, Defendants are liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by the jury at the time of trial.

151.    Defendants are liable to Plaintiff for costs and attorney's fees pursuant to 42 U.S.C. § 1983 and 1988, jointly and severally, for their violation of Plaintiff's clearly established First Amendment right of free speech.

### COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANTS MOMON AND ARMEL

152.    Plaintiff re-alleges and incorporates herein the allegations set forth in paragraphs 1 to 151 of this Complaint.

153.    As alleged above, Defendant police officers intentionally battered Plaintiff in retaliation for Plaintiff's allegedly hitting one of Defendants.

154.    The actions of Defendant police officers resulted in Plaintiff crying, begging them not to hit him anymore, begging them to stop hurting him, choking out that he could not breathe, and crying out that Defendant police officers were trying to kill him.

155.    The battery has caused Plaintiff to suffer from physical symptoms of stress, including insomnia, physical shaking and trembling, sweating, headaches, and trouble concentrating.

156.    The battery has caused Plaintiff to be anxious when leaving his home, and when home he stays away from uncovered windows.

157.    This is the second time that Plaintiff has been battered by police, and he is suffering from vivid flashbacks of the battery, disturbing intrusive thoughts and images of what happened, nightmares, and intense distress at reminders of the battery. He is always on guard for danger, and is particularly apprehensive of encounters with police.

158.    Plaintiff is now seeing a therapist for the emotional issues that arose from the battery.

159.    This behavior – two police officers intentionally battering a suspect in their custody while they held him down so that he could not defend himself, including physically moving his hand protecting his face so that they could hit him in his face – is "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *See Harris v. Kreutzer*, 271 Va. 188, 204 (2006).

160.    Defendant police officers' conduct was intentional, outrageous and intolerable, resulting in severe emotional damage to Plaintiff. Defendant police officers' actions were intended to cause personal, emotional damage to Plaintiff, in retaliation for him allegedly hitting Defendants, and to stop him from hitting Defendants or other police officers in the future.

Defendant police officers knew or should have known that emotional distress would likely result to Plaintiff because of their actions.

161.    Therefore, Defendant police officers are liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by jury at the time of trial.

## COUNT IX: GROSS NEGLIGENCE
## AS TO DEFENDANTS MOMON AND ARMEL

162.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 to 161 of this Complaint.

163.    Defendant police officers, collectively, and each of them individually, owed Plaintiff a duty to perform their law enforcement duties competently without causing unnecessary injury or harm.

164.    Defendant police officers, collectively, and each of them individually, breached their duty by acting and/or failing to act as described more fully above, including:

  a.    Defendants Momon and Armel holding Plaintiff down while punching him repeatedly in retaliation for Plaintiff allegedly hitting Defendant Momon;

  b.    Defendants Momon and Armel holding Plaintiff down such that he could not breathe; and/or

  c.    Defendant Momon holding Plaintiff down such that his leg was bent in the wrong direction and causing Plaintiff pain.

165.    Defendant police officers had tackled Plaintiff and had him subdued and restrained on the ground. Defendant Momon had his left hand on Plaintiff's face and/or neck. Defendant Armel had his hands on Plaintiff seizing him. Plaintiff was unable to move much as he was pinned down by both officers.

27

166.    As Plaintiff lay restrained on the ground, unable to move, and secured by Defendants, Officer Momon hit or punched Plaintiff in the face, at the same time saying, "you [inaudible] me in the face? Huh?"

167.    Plaintiff held his left hand defensively in front of his face to ward off the officer's blows. Defendant Momon then said to Plaintiff, "move your hand. Move your hand. You punched me in the fucking face?"

168.    Defendant Momon grabbed Plaintiff's left hand, which Plaintiff was holding defensively in front of his face, and pulled it out of the way. Defendant Momon gave Plaintiff's hand to Defendant Armel, who held Plaintiff's hand out of the way.

169.    Plaintiff said, "how are you going to hit me, I'm on the fucking…" and the rest of the sentence was cutoff when Defendant Momon hit or punched Plaintiff in the face a second time. Defendant Momon then said, "you [inaudible] me in the face? What the fuck is wrong with you? What the fuck is wrong with you?"

170.    Plaintiff started to say, "what the fuck is wrong…" but he was being choked by Defendants' hands holding him down and could not finish the sentence, but instead ended up audibly choking, wheezing, and gasping for breath. One or both of Defendant police officers were choking Plaintiff as he lay on the ground.

171.    Defendant Momon then said, "put your hands behind your back. Put your hands behind your back," as both Defendants forced Plaintiff onto his stomach and started handcuffing Plaintiff.

172.    Plaintiff managed to wheeze out, "I can't breathe."

173.    Defendant Momon replied, "I don't give a shit what the fuck you are talking about."

174.    Plaintiff apologized several times, saying, "don't hit me again," and "my hands are behind my back." Defendant Momon responded, "fuck you, man," and "what the fuck is you talking about."

175.    The circumstances demonstrate that Defendants Momon's and Armel's actions were done intentionally, wantonly, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights. The circumstances indicate that Defendants Momon's and Armel's actions were so willful and/or wanton as to show a conscious disregard for the rights of Plaintiff. Defendant police officers' actions constituted conduct that was so reckless as to demonstrate an indifference to the consequences of their actions, with Defendant police officers being aware that their conduct probably would injure Plaintiff.

176.    As a direct and proximate result of Defendant police officers' actions, Plaintiff has and continues to suffer injury and damages described above, more specifically but without limitation, severe and persistent headaches, damage to his knee, emotional distress, severe mental anguish, and pain and suffering.

177.    As such, Defendant police officers are liable to Plaintiff for compensatory and punitive damages, in an amount to be determined by the jury at the time of trial.

**PRAYER FOR RELIEF**

Plaintiff, based on the wrongful acts and counts set forth above, requests this Court and the finder of fact to enter a judgment in Plaintiff's favor against all named Defendant on all counts and claims as indicated above in an amount consistent with the proofs at trial, and seeks against all Defendants all appropriate damages arising out of law, equity, and fact for each of all of the above counts where applicable, and hereby requests that the trier of fact award Plaintiff all applicable damages, including without limitation:

1.    Compensatory damages in an amount to be determined as fair and just under the circumstances by the trier of fact for Plaintiff's actual damages, including without limitation, severe physical injuries, medical disabilities, mental anguish, pain and suffering, and intentional infliction of emotional distress;

2.    Punitive damages in an amount to be determined as reasonable or just by the trier of fact;

3.    Reasonable attorney's fees, interest, and costs pursuant to 42 U.S.C. § 1983 as to Plaintiff's federal civil rights and constitutional violations; and

4.    Other declaratory, equitable, and/or injunctive relief, including, but not limited to, implementation of institutional reform and measures of accountability.

5.    Such other relief as the Court deems just, equitable, and proper.

## JURY DEMAND

Plaintiff, by and through his attorney, hereby demands a trial by jury on all claims set forth above.

Dated:                                     Respectfully submitted,

Anthony Lamont Gardner, Jr.
By counsel

/s/Donna L. Biderman
Donna L. Biderman, Esq., VSB No. 40818
Law Office of Donna L. Biderman, PLLC
4015 Chain Bridge Road, Suite 38
Fairfax, Virginia 22030
Telephone: (703) 966-5434
Fax: (888) 450-8569
Email: dbiderman@bidermanlaw.com
*Attorney for Plaintiff Anthony Lamont Gardner, Jr.*