## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| ANTHONY LAMONT GARDNER, JR., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-610 (PTG/WBP) |
| | ) | |
| KENYATTA MOMON, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

This matter was before the Court on Defendants' Motion for Summary Judgment ("Motion") (Dkt. 100). In this action, Plaintiff Anthony Lamont Gardner, Jr. sued Defendants Officer Kenyatta Momon, Officer Thomas Armel, and Fairfax County under various theories for injuries Plaintiff received during his arrest. The remaining counts in the Amended Complaint ("Am. Compl.") (Dkt. 25) included: Count I (Fourth Amendment use-of-force violation); Count II (battery); Count III (failure to intervene as to Officer Momon); Count V (failure to intervene as to Officer Armel); Count VII (First Amendment violation); Count VIII (intentional infliction of emotional distress); and Count IX (gross negligence). Defendants sought summary judgment on all remaining counts. On April 4, 2024, the Court heard oral argument on the Motion. On April 9, 2024, the Court granted the Motion.[1] Dkt. 121. For the reasons stated in its Order as well as those that follow, Defendants' Motion was granted in its entirety.

---

[1] After ruling on the Motion, the Court indicated that it would issue a written opinion to explain its ruling. Dkt. 121.

# I.    Background

## A. Factual Background[2]

The instant matter stems from an incident that occurred on October 30, 2021 at the Shoppers Food Warehouse in Alexandria, Virginia ("Shoppers"). Dep. of Anthony Lamont Gardner, Jr. at 206–07, Defs.' Ex. 1 ("DEX-1"), Dkt. 101-1. That day, Plaintiff Anthony Lamont Gardner, Jr. rode a bus to Shoppers. *Id.*; Defs.' Ex. 2 ("DEX-2") at 6, Dkt. 101-2. While riding the bus, Plaintiff called 911 and told the dispatcher that he had a knife and that if the police officers tried to put their hands on him, he would defend himself. DEX-1 at 224–27. Plaintiff asked a fellow passenger to get off the bus and record Plaintiff so that he could get some publicity. *Id.* at 282:8–12.

Prior to their arrival at the Shoppers, Dispatch advised responding officers that Plaintiff had a history of machete usage. Dep. of Thomas Armel at 38:17–21, Defs.' Ex. 6 ("DEX-6"), Dkt. 101-6. Officers Momon and Armel were the initial responding officers. DEX-2 at 4, 6. At the time, Officer Armel had been on the force for three months. *Id.* at 9:9–11. Officers Momon and Armel thought "it could be somebody who wants to commit suicide by cop[.]" Dep. of Kenyatta Momon at 51:3–4, Defs.' Ex. 5 ("DEX-5"), Dkt. 101-5.

While in Shoppers, Plaintiff used his phone to create a video of himself warning that he was going to get "physical about it today" when the police arrived. Defs.' Ex. 4 ("DEX-4") at 0:45–0:55, Dkt. 101-4. Police body-worn cameras captured what occurred in the store. *See, e.g.,* Defs.' Ex. 9 ("DEX-9") (Officer Momon's body-worn camera); Defs.' Ex. 10 ("DEX-10")

---

[2] Unless noted otherwise, the facts recited in this portion of the memorandum were undisputed by the parties. Plaintiff disputed a number of facts in his Opposition. Those disputes are noted herein but were immaterial, irrelevant to the disposition of the issues in this case, or otherwise not supported by the record.

(Officer Armel's body-worn camera). By the time officers arrived, Plaintiff was at the front self-checkout area of Shoppers. DEX-10 at 3:00–3:30. Store manager Mary Ann Banholzer, along with employee Beatriz Osorio, then approached the self-checkout area. Decl. of Mary Ann Banholzer ¶¶ 4–7, Defs.' Ex. 11 ("DEX-11"), Dkt. 101-11. In response to the officers' question of what she wanted to happen, Ms. Banholzer stated that she wanted Plaintiff banned from the store. *Id.* ¶ 8. At this point, Plaintiff began moving towards Ms. Banholzer with raised arms, exclaiming "This is my motherfucking land, bitch!" *Id.*; DEX-9 at 1:30–1:45; Decl. of Beatriz Osorio ¶ 10, Defendants' Ex. 3 ("DEX-3"), Dkt. 101-3. Ms. Banholzer stated that at that point, "[she] was afraid for [her] safety given how close Mr. Gardner was to [her], his aggressive movements, and his loud cursing."[3] DEX-11 ¶ 8. At that point, Officer Momon "instructed [Officer Armel] that we have disorderly conduct right then." DEX-5 at 57:16–17.

Next, Officer Armel approached Plaintiff. DEX-6 at 52:4. Officer Armel determined he had probable cause to arrest Plaintiff for disorderly conduct, along with trespassing and potential larceny based on what he heard from other employees.[4] *Id.* at 56:19–22; 57:1–3. When Officer Armel approached Plaintiff, Plaintiff took a step away from him and reached into his pocket. Given Plaintiff's prior history of machete usage, Officer Armel feared Plaintiff might be armed with a knife. *Id.* at 52:4–11. Officer Armel also noted that Plaintiff "bladed his body away from [Officer Armel] in a fighting position" and "pulled up his pants[,]" which Officer Armel had "seen people do before they fight or run[.]"[5] *Id.* at 60:15–19.

---

[3] Plaintiff attempted to dispute that Ms. Banhozler was reasonably in fear for her safety as a result of his actions. Pl.'s Summary of Disputed Facts ("Pl. SOF") ¶ 19, Dkt. 106. But as discussed below, Plaintiff failed to effectively dispute this asserted fact.

[4] Plaintiff disputed that Officer Armel possessed probable cause to arrest Plaintiff. Pl. SOF ¶ 20. As discussed below, however, there is no genuine dispute on this issue.

[5] Plaintiff disputed that he bladed his body away from Office Armel and that this behavior could reasonably be interpreted as presenting a threat to the officer. Pl. SOF ¶¶ 22–23.

When Officer Armel approached Plaintiff and began giving orders, Plaintiff responded, "hold on, I'm going to put you on camera" and reached for his phone from his back pants pocket. DEX-10 at 4:00–4:30. As Plaintiff was reaching into his back pants pocket, he also backed away from Officer Armel. *Id.* Initially, Officer Armel reached for his taser but then decided not to use it after determining that Plaintiff was not reaching for a deadly weapon in his back pocket. DEX-6 at 52:18–53:3. Instead, Officer Armel decided he would "use empty-handed tactics to detain him[.]"[6] *Id.* at 66:13–14.

At this point, Plaintiff punched Officer Armel. DEX-11 ¶ 9 (declaration of Ms. Banholzer stating that she witnessed Plaintiff punch Officer Armel in the face). Then, Officer Armel recalled that as he "grabbed [Plaintiff's] shirt, [Plaintiff] struck [him] what [Officer Armel thought] was multiple times in the face with closed hands . . . [Officer Armel] tried to wrap [his] arms around [Plaintiff's] waist and then take him to the ground." DEX-6 at 66:20–67:2. Video evidence indeed shows that Officer Armel grabbed Plaintiff around his waist to take him to the ground. DEX-9 at 1:50–55. Officer Armel and Plaintiff subsequently hit a freestanding metal display shelf. *Id.* Officer Momon then rushed to Officer Armel and Plaintiff.[7] *Id.* Finally, Officer Armel and Plaintiff fell to the floor, along with Officer Momon. *Id.*

While the three men were on the ground, Officer Armel grabbed Plaintiff's right hand but

---

However, Plaintiff's denial is blatantly contradicted by the video evidence in the record, which the Court properly considered at this stage.

[6] Plaintiff claimed that when he saw Officer Armel reach towards his weapon, Plaintiff "believed it to be a firearm" and therefore "was going to videotape the incident because [he] was afraid of police brutality." Decl. of Anthony Lamont Gardner, Jr. ¶¶ 12–13, Pl. Ex. 1 ("PEX-1"), Dkt. 106-1. This, however, is immaterial to the disposition of this case.

[7] Plaintiff disputes that Officer Momon rushed over to assist Officer Armel at this point. Pl. SOF ¶ 26. However, as discussed below, Plaintiff's denial is blatantly contradicted by the video evidence in the record. *See Harris v. Pittman*, 927 F.3d 266, 275–76 (4th Cir. 2019).

Plaintiff's other hand remained free.[8]  DEX-6 at 69:13–70:4.  Plaintiff punched Officer Momon three times in his left eye, which gave Officer Momon the impression that he was bleeding as a result of Plaintiff's blows.[9]  DEX-5 at 60:5; *id.* at 61:13–14.  In actuality, video evidence shows that it was Officer Armel who had a cut on his face above his eye after the altercation.  DEX-9 at 7:15–7:20.

Officer Momon subsequently delivered head strikes to Plaintiff before Plaintiff was handcuffed.[10]  DEX-5 at 63:21–64:2.  After Momon delivered the blows, Officer Armel was able to secure Plaintiff's free hand.  DEX-6 at 70:17–18.  While Officer Armel was handcuffing Plaintiff, another officer who had arrived to the scene (Officer Jones) was kneeling on Plaintiff's back.[11]  Defs.' Ex. 13 at 8:45–8:55 ("DEX-13"), Dkt. 101-13.  At one point, Plaintiff stated "get off of me" and "I can't breathe."  *Id.* at 9:15–9:30.  Officer Momon stated that because Plaintiff was talking, he determined "that [Plaintiff was] able to breathe."  DEX-5 at 66:19.  Officer Armel removed a knife from Plaintiff's pants pocket once he was handcuffed.  DEX-13 at 9:00–9:10.

Video evidence showed Officer Jones and Officer Ucekay (an additional responding

---

[8] Plaintiff claimed that he "was unaware that [Officer Momon] was a police officer," but does not dispute that he punched Officer Momon.  Pl. SOF ¶¶ 26–27; PEX-1 ¶¶ 14–15.  Plaintiff's claim is immaterial.

[9] Plaintiff did not dispute that he punched Officer Momon, but he instead disputes the manner in which he punched Officer Momon.  Pl. SOF ¶ 27.  This dispute is immaterial to the disposition of this case.

[10] Officer Momon stated that after being punched three times by Plaintiff, Officer Momon "started to go into protection mode."  DEX-5 at 62:10.  He believed he needed "to get this person in custody."  *Id.* at 62:13.  Officer Momon stated that this is why he "proceed[ed] to give hand strikes to Mr. Gardner's head[.]"  *Id.* at 62:20–21.  Plaintiff disputed that the strikes were delivered to stun Plaintiff, instead claiming that the strikes were retaliatory.  Pl. SOF ¶ 30.  However, as discussed below, this dispute was immaterial because the inquiry as to the reasonable application of excessive force is an objective one.

[11] Officer Jones stated that he "appl[ied] pressure to Mr. Gardner's back to keep him from rolling over or getting off the ground."  Decl. of Nathan Jones ¶ 11, Defs.' Ex. 8 ("DEX-8"), Dkt. 101-8.  Plaintiff did not sue Officer Jones.

officer) then leading Plaintiff outside while handcuffed. *Id.* at 10:00–10:30. When officers told Plaintiff to sit down, Plaintiff responded, "[h]ow the fuck I'm supposed to sit down?"[12] DEX-8 ¶ 14. Officer Joseph Anderson (another responding officer) decided to get a strap to control Plaintiff's legs (a "RIPP Hobble"). *Id.* ¶¶ 16–17. Officer Momon, along with another officer, then applied pressure to Plaintiff's lower leg while Officer Anderson applied the strap to his legs. DEX-5 at 123:5–15. Video evidence showed Plaintiff yelling "my leg does not bend that way" and "he's trying to break my leg" when Officer Momon applied pressure to Plaintiff's leg. DEX-13 at 11:30–12:00.

Thereafter, video evidence showed Officer Armel receiving on-site treatment for the injury to his face above his eye, which he told paramedics was the result of Plaintiff's punch. DEX-10 at 10:30–11:00. Officer Momon also received treatment from paramedics for his hand. *Id.* at 13:00–13:15. Officer Momon's knuckles were bloodied, and he stated to paramedics that it was not his blood. DEX-9 at 8:20–8:50. He later stated that a scrape he had received "[was] from [Plaintiff's] face." *Id.* at 10:45–10:55. Video evidence also shows Officer Momon recounting the incident to the responding paramedics, stating "[Plaintiff] was hitting me, and I was like oh motherfucker you hit me? Bop, move your fucking hand!" *Id.* at 14:30–14:40.

### B. Procedural History

On May 8, 2023, Plaintiff filed his original complaint in this action. Dkt. 1. Subsequently, the Court dismissed several of the counts and gave Plaintiff leave to amend certain counts. Dkt. 23. On August 3, 2023, Plaintiff filed his instant Amended Complaint. Dkt. 25. On August 17, 2023, Defendants filed a second motion to dismiss. Dkt. 28. On October 5, 2023, this Court heard

---

[12] Officer Jones observed that Plaintiff was "actively resisting [their] efforts by tensing his body[.]" DEX-8 ¶ 12. Plaintiff disputed that he was actively resisting officers at this point. Pl. SOF ¶ 38. The dispute was immaterial to the disposition of the case.

argument on the motion to dismiss and granted the motion in part and denied it in part. Dkt. 35. This left intact the following claims: Count I (Plaintiff's Fourth Amendment claim against Defendant Officers in their personal capacities for excessive force, as well as a generalized-custom claim against Defendant Fairfax County); Count II (Plaintiff's claims of battery against Defendant Officers); Count III (Plaintiff's claim of failure to intervene in violation of the Fourth Amendment against Officer Momon in his personal capacity); Count V (Plaintiff's claim of failure to intervene in violation of the Fourth Amendment against Officer Armel in his personal capacity); Count VII (Plaintiff's claim against Defendant Officers in their personal capacities for violation of his First Amendment rights); Count VIII (Plaintiff's claim of intentional infliction of emotional distress against Defendant Officers); and Count IX (Plaintiff's claim of gross negligence against Defendant Officers).

On March 6, 2024, Defendants filed the instant Motion for Summary Judgment seeking judgment on all remaining claims. Dkt. 100.

## II.      Legal Standard

Summary judgment is appropriate where a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). A genuine dispute about a material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). All inferences must be made in favor of the nonmoving party. *Hawkins v. McMillan*, 670 F. App'x 167, 168 (4th Cir. 2016). A party demonstrates a genuine dispute of material fact by "citing to particular parts

7

of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

### III.    Analysis

#### A. Sufficiency of Plaintiff's Briefing

Defendants raised several procedural deficiencies with Plaintiff's Opposition that are worth addressing first. Defendants claimed in their Reply that Plaintiff's Opposition was deficient because Plaintiff failed to cite to particular parts of the record that demonstrated any genuine dispute of material fact. Dkt. 111 at 1–3.

Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(3). Rule 56(e) thus "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).

The Fourth Circuit has stated that once a moving party meets its initial responsibility of showing that there is no genuine dispute of material fact in a motion for summary judgment, "[u]nder this standard, '[t]he mere existence of a scintilla of evidence' is insufficient to withstand an adequately supported summary judgment motion." *Bandy v. City of Salem, Virginia*, 59 F.4th 705, 710 (4th Cir. 2023) (citations omitted). "Similarly, 'conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion.'" *Id.* (citation omitted).

Here, Plaintiff's Opposition did not contain a similar level of citations to the record as

Defendants' Motion.  Indeed, Plaintiff merely attached two exhibits to his Opposition, only one of which this Court could consider: Plaintiff's declaration.[13]  Plaintiff did not otherwise cite to the record in his Opposition.  *See, e.g.*, Dkt. 106 at 2–18 (citing to Plaintiff's declaration).  It is this Court's obligation to "construe all facts and reasonable inferences in the light most favorable to the nonmoving party."  *Bandy*, 59 F.4th at 709.  While the Court might determine that Plaintiff does not carry his burden to demonstrate a genuine dispute of material fact even in a light most favorable to him, Plaintiff's Opposition was not so deficient as to require this Court to grant summary judgment for Defendants based solely on Plaintiff's briefing deficiencies.  However, if facts are not properly disputed, a court can decide that they are admitted for the purposes of deciding summary judgment.  *Wai Man Tom*, 980 F.3d at 1037  (stating that "conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion").

### B.  Fourth Amendment Claims (Counts I, III, and V Against Defendant Officers)

The Court now turns to Counts I, III, and V, which involved personal-capacity claims against Defendant Officers for excessive force and each officer's respective failure to intervene.  Defendant Officers claimed that they were entitled to qualified immunity as to these claims.  Dkt. 101 at 20–22.

"Officials have qualified immunity either if the facts do not make out a violation of a

---

[13] The other exhibit Plaintiff attached was an unsworn expert report, to which Defendants objected.  *See* Dkt. 111 at 17–18 (Defendants' objection to use of expert report); Dkt. 106-2 (report of George Kirkham).  Plaintiff failed to explain how the facts and analysis in the report could be presented in admissible form.  *Lambert v. Savaseniorcare Admin. Servs., LLC*, 2022 WL 3027993, at *8 (D. Md. July 29, 2022) (recognizing that Fed. R. Civ. P. 56 "prescribes a multi-step process wherein, if the opposing party objects on admissibility grounds, 'the burden is on the proponent [ ] to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" (citation omitted)).  Therefore, the Court does not consider or cite to the expert report herein.

constitutional right or if the right was not clearly established at the time." *Snider v. Seung Lee*, 584 F.3d 193, 198 (4th Cir. 2009). A court may address either prong of the qualified-immunity test first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

    *1. Whether Defendants Violated Plaintiff's Fourth Amendment Rights*

Because the merits of Plaintiff's remaining claims in Counts I, III, and V hinged on whether Defendants violated the Fourth Amendment, the Court shall begin with the first prong of the qualified-immunity test. Specifically, the Court considers if there remains a genuine dispute of material fact as to whether Defendant Officers acted with excessive force in the course of detaining Plaintiff.

The question as to whether Officers Momon and Armel unconstitutionally acted with excessive force "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citation omitted). Importantly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. A court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The Fourth Circuit has held that "[t]hough it focuses on the objective facts, the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). This means that "the officer's

subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.*   Critically, "using the officer's perception of the facts at the time limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight." *Id.*

Though the *Graham* factors are not dispositive or exhaustive, the Fourth Circuit has analyzed the first prong of the qualified-immunity test by applying the *Graham* factors. *See Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 901 (4th Cir. 2016).[14]   The first *Graham* factor considers the severity of the crime. *Id.* at 899.   The second and third *Graham* factors essentially ask whether there is a genuine dispute of material fact as to whether Plaintiff "threatened the safety of others and resisted seizure" and whether some use of force was justified as a result. *Id.* at 901.   The Fourth Circuit recently held that "[a]mong these considerations, the most important is the second factor—whether the suspect posed an immediate threat to others." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024) (citation omitted).

As the Fourth Circuit has warned, a court must not draw a series of inferences in favor of the movant at the summary-judgment stage and overlook record evidence that could support the non-movant's claim. *Harris v. Pittman*, 927 F.3d 266, 278 (4th Cir. 2019).   However, when assessing between "a videotape of undisputed authenticity" and "the plaintiff's story," a nonmoving plaintiff's story should not be adopted by a court where "the nonmoving plaintiff's account is 'blatantly contradicted by the record[.]'" *Id.* at 275–76 (quoting *Scott v. Harris*, 550

---

[14] The *Graham* factors have been summarized by the Fourth Circuit as follows: "First, we look to 'the severity of the crime at issue'; second, we examine the extent to which 'the suspect poses an immediate threat to the safety of the officers or others'; and third, we consider 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Armstrong*, 810 F.3d at 899 (citations omitted).   The Fourth Circuit has recognized that the "first *Graham* factor is intended as a proxy for determining whether 'an officer [had] any reason to believe that [the subject of a seizure] was a potentially dangerous individual.'" *Id.* at 900 (citation omitted).

U.S. 372, 380 (2007)).  In other words, "[s]ummary judgment is proper under *Scott* only when there is evidence – like the videotape in *Scott* itself – of undisputed authenticity that shows some material element of the plaintiff's account to be 'blatantly and demonstrably false.'"  *Id.* at 276 (citation omitted).  Otherwise, any credibility determinations are proper for the factfinder.  *Id.*  In this case, Defendants have produced video evidence that the Court may consider that directly contradicts Plaintiff's version.

Plaintiff disputed that (1) Ms. Banholzer was reasonably in fear for her safety as a result of Plaintiff's conduct inside Shoppers, and as a result (2) Plaintiff appeared to pose a threat to the safety of officers or others.  Pl. SOF ¶ 19 (citing PEX-1 ¶11).  Such a claim could support a genuine dispute of material fact relevant to the *Graham* factors, as it could support a conclusion appropriate for the factfinder that Officers Armel and Momon did not have probable cause to arrest Plaintiff for disorderly conduct.

Plaintiff's argument, however, was defective in two ways.  First, the Court notes the fact that a grand jury found probable cause for Plaintiff's disorderly conduct charge when it indicted him.  *See* Dkt. 111-1; *see also Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (finding that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry" (citation omitted)).

Second, even without weighing the credibility of the statement—which is the province of the factfinder—Defendants were correct that "Gardner cannot defeat summary judgment by submitting an affidavit to the court that directly contradicts his prior sworn testimony."  Dkt. 111 at 6; *Scott*, 550 U.S. at 380.  Specifically, in his deposition, Plaintiff confirmed that he cursed at Ms. Banholzer, that he took at least "half a step" towards her, and that he raised his arm towards

her as he cursed. DEX-1 at 248:1–16. Despite his earlier admission, Plaintiff now "disputes that he was standing near Ms. Banholzer, that he took a step toward her, and that he raised his arm in her direction." Pl. SOF ¶ 18 (citing PEX-1 ¶ 11).

Even if Plaintiff may have later disputed these facts, such a dispute was a "visible fiction" that the Court should not ignore at this stage or send to a jury. *Scott*, 550 U.S. at 381. The video evidence conclusively shows Plaintiff taking a step towards Ms. Banholzer, raising his arms, cursing, and yelling. DEX-9 at 1:30–1:45. Plaintiff's deposition confirmed this account. DEX-1 at 248:1–16. Moreover, Plaintiff did not dispute that Officers Momon and Armel had entered Shoppers with the knowledge that Plaintiff had told 911 he was armed with a knife and that he had a history of machete usage. *See* Pl. SOF ¶ 12.

Thus, the Court may properly consider this evidence without usurping the role of the factfinder and conclude that Plaintiff failed to show a genuine dispute of material fact as to whether he appeared threatening to a reasonable officer. *Scott*, 550 U.S. at 380. Indeed, the Court finds that Plaintiff failed to show that Officers Armel and Momon did not have "reason to believe [that he] was dangerous." *Armstrong*, 810 F.3d at 900.

As to resistance, Plaintiff did not dispute that he punched Officer Armel and Officer Momon inside Shoppers. Pl. SOF ¶¶ 24–27. Despite this, Plaintiff claimed in his declaration that he was not resisting arrest. PEX-1 ¶ 18. Nevertheless, the video evidence before this Court clearly showed that Plaintiff resisted arrest at every turn, starting from the moment he backed away from Officer Armel and punched him, continuing to when he failed to follow the officers' commands while on the ground, and even when he was outside Shoppers and in handcuffs. DEX-9 at 1:50– 2:30 (showing Plaintiff's resistance inside Shoppers); DEX-13 at 11:30–12:00 (showing Plaintiff's resistance outside Shoppers). As noted above, the Court will not credit Plaintiff's conclusory and

contradictory statements in the face of blatantly contradictory video evidence. *Wai Man Tom*, 980 F.3d at 1037 ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion"). Because the record is clear, there is no genuine issue of material fact; Plaintiff resisted arrest.

Finally, this Court concluded that there is no genuine dispute that the force used by Officers Armel and Momon was indeed reasonable. In contesting reasonableness, Plaintiff focused his arguments on the officers' subjective reasons for their conduct. For example, Plaintiff pointed to Officer Momon's "own statements [which] show that he was punching Plaintiff in retaliation and not to effectuate an arrest." Dkt. 106 at 23. Defendants, however, were correct that "Officer Momon's purported motive for using force is irrelevant here." Dkt. 111 at 8. As the Supreme Court has stated, under the objective reasonableness test, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. In his deposition, Officer Momon stated that he struck Plaintiff to gain his compliance. DEX-5 at 63:3–10. Plaintiff failed to cite evidence in the record that would allow a factfinder to conclude that Officer Momon did not act as a reasonable officer would in this situation.

Nor did Plaintiff cite case law that would support his claim that a factfinder could find that a reasonable officer would act differently. Rather, in the instant Motion, Defendants noted that the Fourth Circuit has considered cases with similar factual circumstances at bar and found that the officers there did not unconstitutionally deploy excessive force. Dkt. 101 at 15–16 (citing *Pegg v. Herrnberger*, 845 F.3d 112 (4th Cir. 2017); *Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002); *Karadi v. Jenkins*, 7 F. App'x 185 (4th Cir. 2001)).

14

In *Pegg v. Herrnberger*, the Fourth Circuit reversed a court's denial of summary judgment and found a defendant police officer was entitled to qualified immunity where the officer arrested an individual for the expiration of an inspection sticker after pushing the individual against his vehicle and then taking the individual to the ground. 845 F.3d at 120. In that case, as in this present action, there was no dispute that the plaintiff resisted arrest. *Id.* In *Brown v. Gilmore*, the Fourth Circuit reversed a district court's denial of summary judgment where a police officer applied a "minimal level of force" in a "tense" situation when an officer handcuffed a woman he perceived as resisting arrest, dragged her to the car, and then pulled her into the cruiser. 278 F.3d at 369. The plaintiff complained that the handcuffing caused her wrists to swell. *Id.* Similarly, in *Karadi v. Jenkins*, the Fourth Circuit reversed a district court's denial of qualified immunity where a police officer had grabbed the plaintiff's arm to compel her to move from the middle of a store to a security office and then twisted plaintiff's arm to handcuff her. 7 F. App'x at 189, 194–95.

Plaintiff failed to address *Pegg*, *Brown*, and *Karadi*. Rather Plaintiff focused on two different Fourth Circuit cases in support of his excessive-force claim—*Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005), and *Harris v. Pittman*, 927 F.3d 266 (4th Cir. 2019). Dkt. 106 at 21–22. But those cases are clearly distinguishable as the Fourth Circuit's analysis there focused on the use of deadly force. *Waterman*, 393 F.3d at 482 (finding that a factfinder could conclude that it was unreasonable for officers to fire shots at a vehicle once it had passed the officers); *Harris*, 927 F.3d at 279 (finding that a factfinder could conclude that it was unreasonable for officers to fire bullets at an individual while he was lying wounded and unarmed on the ground). Here, there is no dispute that neither Officer Momon nor Officer Armel used deadly force against Plaintiff.

Finally, in their Reply, Defendants raised an additional Fourth Circuit case, *Hamstead v. Walker*, 2022 WL 5133569 (4th Cir. 2022). There, the Fourth Circuit found that qualified

immunity was appropriate under the *Graham* factors where an officer arrested a resisting individual for disorderly conduct while the arrestee was kicking, screaming, and trying to pull away from the officer. *Id.* at *5–6. The police officer first put the plaintiff up against a truck and then on the ground, telling her to "shut up," before arresting her. *Id.* at *5. The Fourth Circuit concluded that the officer's "efficient means to bring about [the plaintiff's] arrest" entitled him to qualified immunity. *Id.* at *6. In the instant case, the video evidence clearly shows that there was no more than forty-five seconds between the time that Officer Armel first approached Plaintiff to arrest him and when Plaintiff was actually handcuffed on the ground. DEX-9 at 1:48–2:35.

There was no dispute that Officer Armel avoided using a taser here. DEX-6 at 52:18–53:3. There was also no dispute that Plaintiff punched Officers Armel and Momon, which means that Plaintiff cannot genuinely dispute that he was violent during his arrest. PEX-1 ¶¶ 13, 15. As to the *Graham* factors, then, Plaintiff failed to carry his burden of showing a disputed material fact that would allow a factfinder to conclude that Plaintiff did not pose an immediate threat to the safety of the officers and others or that he did not resist arrest.

For these reasons, the Court concluded that Officers Armel and Momon did not exercise excessive force while arresting Plaintiff and in turn did not violate the Fourth Amendment. As a result, this Court found that Officers Armel and Momon were entitled to qualified immunity and granted summary judgment in their favor. This ruling applied to Count I, as well as Count III and Count V, which are Plaintiff's failure-to-intervene claims against Officers Momon and Armel, respectively, and are related to Plaintiff's excessive-force claim.

2.      *Whether Defendants Violated Clearly Established Law*

Because Plaintiff has not established a constitutional violation, it is not necessary for the Court to address the second prong of the qualified immunity test.   Even if the Court reached the issue, Plaintiff failed to demonstrate that any of Defendants' actions violated clearly established law.

"[T]he 'clearly established' requirement means that 'at the time of the officer's conduct, the law was sufficiently clear that *every* reasonable official would understand that what he [was] doing is unlawful.'"   *Omeish v. Kincaid*, 86 F.4th 546, 555 (4th Cir. 2023) (citation omitted). "Thus, the law must have placed the constitutionality *of the officer's conduct* 'beyond debate,' such that 'all but the plainly incompetent or those who knowingly violate the law' are protected." *Id.* (citation omitted).   In addition to the law being both settled and controlling, "the law must not be established at a high level of generality but must apply clearly to the *particular* circumstances of the officer's conduct."   *Id.*   As to excessive-force claims in particular, a party must "identify caselaw addressing similar circumstances[.]" *Id.*

In his Opposition, Plaintiff identified just one case in support of his claim that Officers Armel and Momon violated clearly established law. Dkt. 106 at 27–28.   That case was *Harris v. Pittman*, 927 F.3d at 266.   As noted above, however, the *Harris* officers used deadly force when they fired bullets at an individual while he was lying on the ground and had already been wounded and unarmed. 927 F.3d at 279.   Here, Defendants did not use deadly force.   Moreover, there is no dispute that Plaintiff was in fact armed.   Officer Armel pulled a knife out of Plaintiff's pants after he was handcuffed. DEX-13 at 9:00–9:10.   Thus, *Harris* is inapposite when compared to the officers' conduct here.   As a result, Plaintiff failed to satisfy this second prong of the qualified-immunity inquiry, and Officers Armel and Momon were entitled to summary judgment and

17

qualified immunity as to Counts I, III, and V.[15]

### C. First Amendment Violation (Count VII Against Officers Momon and Armel)

The surviving aspect of Count VII alleges that Officers Momon and Armel violated Plaintiff's First Amendment rights when they arrested him in Shoppers. As with Plaintiff's excessive-force claim, Defendants sought summary judgment based on qualified immunity.

### 1. Whether Defendants Violated Plaintiff's First Amendment Rights

"A plaintiff claiming First Amendment retaliation must demonstrate that: '(1) [he] engaged

---

[15] In a published opinion that was issued after this Court's April 9th Order, the Fourth Circuit found that "an officer striking the head of a non-dangerous, non-actively resistant, partially subdued adolescent would not be objectively reasonable." *Lewis v. Caraballo*, 98 F.4th 521, 534 (4th Cir. 2024). It noted that "[b]ecause the head contains the brain, it is commonly understood that head injuries can pose a substantial risk of serious and lasting physical harm. Courts have accordingly recognized the unique danger of strikes to the head." *Id.* at 532. The Fourth Circuit also found that "the right of a suspect who was at the very least partially subdued and posed no immediate threat to be free from excessive force in the form of strikes to his head was clearly established at the time of the events of this case in 2018." *Id.* at 537. The Fourth Circuit therefore affirmed a district court's denial of summary judgment as to excessive force.

Though the Fourth Circuit held that the right to be free from head strikes was clearly established since 2018, this Court notes that the undisputed facts in the instant case remain sufficiently distinct to merit summary judgment. In *Lewis*, the plaintiff was tased and subject to head strikes after being forced to the ground by officers. *Id.* at 526–27. The Fourth Circuit noted that the plaintiff was an adolescent who merely "clenched his fists," was "under the weight of two larger, trained officers and was 'at least partially subdued,'" and the video evidence "indicated that [the plaintiff] was *retreating* from the officers and that he never voluntarily touched them." *Id.* at 532 (citations omitted). The Fourth Circuit also noted that the plaintiff was unarmed. *Id.* The Fourth Circuit therefore determined that a reasonable jury could find that the plaintiff posed no immediate threat to anyone's safety. *Id.*

As discussed above, however, there is no genuine dispute that in the instant case, Plaintiff punched Defendant Officers, that he did so while resisting arrest, and that Officer Armel chose not to apply a taser before Officer Momon delivered head strikes after being punched himself by Plaintiff. DEX-6 at 52:18–53:3; PEX-1 ¶¶ 13, 15. There is also no genuine dispute that Plaintiff had informed the 911 dispatcher that he was armed with a knife, of which Defendant Officers were made aware. DEX-1 at 224–27.

The circumstances confronting Defendant Officers in the instant case were thus sufficiently distinct from the circumstances confronting the officers in *Lewis*, meaning that this Court's prior conclusion that Plaintiff fails to introduce a genuine dispute of material fact as to whether Defendant Officers used an objectively reasonable amount of force remains appropriate.

in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct.'" *Davison v. Rose*, 19 F.4th 626, 636 (4th Cir. 2021) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). This is an objective inquiry. As one court has stated, "[i]f probable cause exists, an argument that an arrestee's speech rather than the criminal conduct was the motivation for the arrest must fail." *Lowe v. Spears*, 2009 WL 1393860, at *3 (S.D. W. Va. May 15, 2009) (citations omitted).

Plaintiff claimed that his speech in Shoppers was protected, even if his remarks were offensive or rude. Dkt. 106 at 30. And that even if his words lacked civility, "there was no reason to believe that his words would provoke violence in Ms. Banholzer, and in fact she barely reacted to his words." *Id.* Therefore, Plaintiff contended that there was no probable cause to arrest Plaintiff in Shoppers. Plaintiff failed to cite to any evidence in the record to support his claim, despite his obligation to do so. *See* Fed. R. Civ. P. 56(c)(1)(A).

In his attached declaration, Plaintiff offers bare denials, claiming that he "did not threaten Maryann Banholzer. [He] did not approach her or do anything to her other than engage in conversation. [His] statements were not threatening. [He] did not place her in reasonable fear for her safety." PEX-1 ¶ 11. Even so, as already discussed above, Defendants marshaled evidence, including the video of the incident, that contradicted this statement so clearly that it would have been inappropriate for this Court to send Plaintiff's First Amendment claim to a factfinder. *See* DEX-1 at 247–48 (Plaintiff confirming in his own deposition that he cursed at Ms. Banholzer, that he took at least "half a step" towards her, and that he raised his arm towards her as he cursed); DEX-9 at 1:30–1:45 (video evidence showing Plaintiff taking a step towards Ms. Banholzer, raising his arms, cursing, and yelling); *see also Harris*, 927 F.3d at 276 (stating that a nonmoving

plaintiff's story should not be adopted by a court on summary judgment only where "the nonmoving plaintiff's account is 'blatantly contradicted by the record[.]'" (citation omitted)).

Moreover, as this Court has discussed in connection with Plaintiff's excessive-force claims, there was no dispute that a grand jury found that there was probable cause to arrest Plaintiff for disorderly conduct. Dkt. 111-1. For these reasons, Defendants demonstrated that there is no genuine dispute of material fact; in this case, the officers had probable cause to arrest Plaintiff and did not violate his First Amendment rights when they arrested him.

### 2. Whether Defendants Violated Clearly Established Law

As with Plaintiff's excessive-force claim, the case law that Plaintiff cited in support of his First Amendment claim does not "apply clearly to the *particular* circumstances of the officer's conduct." *Omeish*, 86 F.4th at 555. Plaintiff focused on one case in support of his claim, which was *Ford v. City of Newport News*, 474 S.E. 2d 848 (Va. Ct. App. 1996). In *Ford*, the Court of Appeals of Virginia found that though a "defendant was so loud and boisterous that apartment dwellers in a nearby building came out on their porch[,]" a police officer's arrest for disorderly conduct lacked probable cause for disorderly conduct because the defendant "made no threatening remarks, uttered no words that would reasonably incite a breach of the peace, or made no threatening movements toward the officers." 474 S.E. 2d at 850–51.

In this instant action, however, there is no genuine dispute that Plaintiff moved toward a store employee in a manner that made her feel threatened while shouting crude remarks. DEX-9 at 1:30–1:45 (video evidence); DEX-3 ¶ 10 (declaration of Ms. Osorio); DEX-11 ¶ 8 (declaration of Ms. Banholzer). *Ford*, therefore, does not contemplate a circumstance sufficiently similar to the undisputed facts at hand.

For these reasons, Officers Momon and Armel were entitled to qualified immunity and

20

summary judgment as to Plaintiff's First Amendment claim.

### D.  Generalized-Custom Claim (Count I Against Fairfax County)

This Court permitted Plaintiff's generalized-custom claim under Count I against Defendant Fairfax County to proceed through discovery.  However, the Supreme Court has found that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."  *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Thus, because the Court granted summary judgment in favor of Officers Momon and Armel as to the excessive-force claims, then the Court also granted summary judgment for Fairfax County as to Plaintiff's concomitant generalized-custom claim. *Id.*

Moreover, in order to proceed with a generalized-custom claim, Plaintiff "must show both that he has suffered a constitutional harm and that the harm was the result of the Department's unconstitutional policy or custom."  *English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024).  As already discussed above, the Court had precluded from its consideration the only evidence that Plaintiff submits in support of his generalized-custom claim, which is the unsworn expert report. *See* discussion, *supra* at 9 n.13.  Thus, even if Plaintiff's excessive-force claims against Defendant Officers did not fail, Plaintiff failed to include evidence that this Court may consider to support his generalized-custom claim as required by Fed. R. Civ. P. 56(c)(1)(A).  Accordingly, the Court granted summary judgment.

### E.  State-Law Claims (Counts II, VIII, and IX Against Officers Momon and Armel)

The remaining state-law claims that Plaintiff brings against Officers Momon and Armel are battery (Count II), intentional infliction of emotional distress (Count VIII), and gross negligence (Count IX).  Summary judgment was appropriate on all claims in Defendants' favor.

As to battery, the Eastern District of Virginia has previously found in interpreting Virginia law that "if reasonable force is used by police officers in execution of their lawful duties, they are immune from suit for such acts." *Ware v. James City Cnty., Va.*, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009), *aff'd*, 380 F. App'x 274 (4th Cir. 2010). Since there was no genuine dispute that Officers Armel and Momon used reasonable force as explained *supra*, summary judgment is appropriate as to Plaintiff's claim of battery as well. The same fate was appropriate for Plaintiff's gross negligence claim. *See Johnson v. Dep't of Alcoholic Beverage Control*, 2016 WL 7235836, at *7 (W.D. Va. Dec. 13, 2016) (observing that a "plaintiff's claims of gross negligence, battery, and assault 'rise or fall' with his excessive force claim." (citation omitted)).

As to Plaintiff's claim of intentional infliction of emotional distress, "[u]nder Virginia law, 'liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it.'" *Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005) (citation omitted). Here, in his Opposition, Plaintiff merely stated in a conclusory fashion "that he has suffered emotional distress and severe mental anguish as a result of Momon's and Armel's actions" without offering any evidence to support this claim. Pl. SOF ¶ 27. Such a threadbare assertion, with no citation to the record, was insufficient to demonstrate a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A). Therefore, as to this claim, summary judgement in favor of Officers Momon and Armel was appropriate.

## IV.    Conclusion

For these reasons, and for those already stated in the April 9th Order (Dkt. 121), this Court granted Defendants' Motion for Summary Judgment (Dkt. 100).

Entered this 30th day of December, 2024.
Alexandria, Virginia

Patricia Tolliver Giles
**United States District Judge**